The Court of Appeals ordered the case up to the Court of Errors, for their adjudication of the question made by the first ground taken for a new trial, and that Court delivered the following opinion.
Curia, per Evans, J.
All the authorities concur that the marital rights of the, husband attach to all the wife’s personal estate in possession, sui juris. So, also, where the wife has an immediate right of possession in severalty to a chattel interest, it becomes the husband’s; on the principle that the right of property draws to it the possession. The same consequences follow where the wife’s title is undisputed, and the chattel is in possession of another, holding under and for her.
But this case requires us to go farther, and to say that where the wife is jointly entitled with another, there the marital right of the husband attached, although the right of the *465 wife was disputed, and no partition was made in the wife’s life time, so as to vest in. actual possession every part of the joint estate in severalty. .
Can the affirmative of this proposition be maintained ? If it can, then Verdier is entitled to retain his verdict. I do no.t find any English authority bearing directly on the subject. The reason probably is, that at common law, there was no process whereby joint owners could be compelled- to make partition. The parties -must either continue to hold jointly, or voluntarily make partition. Nor have I found any American case, besides our own, hereafter to be noticed, unless the case of Griswold v. Pennyman, an abstract of which I find in the 5 American Common Law Reports, 552, referring to '2 Cowp. R. 564;■ in -that case it is said, the share of personal estate accruing to the wife during coverture, vests, even before distribution, in the husband, absolutely. If the share spoken of (as I should infer from -the words) be the wife’s share under the Statute of distributions, it is clear that it would not be law in this State, for until distribution, the legal estate is in the executor or administrator, and the wife is not entitled -to possession ; and without a right of possession, it is very clear the marital rights do not attach. The distributee has only an equity until partition is -made.-
But it is supposed that this question has -been decided the cases of the Ordinary v. Geiger, and in Burgess v. Heape, and in other cases which have followed. I am free •to admit, that there are dicta .in some of those cases, assume the doctrine here contended for. But the cases (at least the early ones, which the' subsequent cases profess-to follow,) I am entirely satisfied, were not decided on that principle ; at least it is very clear they might have been decided on other very clear and independent grounds. The case of the Ordinary v. Geiger arose under the following ciroum-•stances: A, by deed, gave certain negroes to four persons; one of them, Dorothy, married Geiger ; one of the negroes, oh, the marriage, went into Geiger’s’possession, but without any formal partition, — on his death the question arose, whether his wife’s share should have been put in the-inventory of his estate? and it was so decided. Now it does not appear with clearness, whether the contest reláted to the negro in his possession, or to his wife’s share in the whole of-the negroes; . but I think it is very clear that the -negro which had been ■ delivered up to Geiger, was alone in question. If it,related to all, and the Court decided, on the ground supposed, that the possession of one joint tenant would suffice to vest the share of another joint tenant in her husband, then it would have been wholly immaterial whether Geiger had had any possession, or there'had been an informal partition. All we know of this case is from Judge Brevard’s Reports.; it is found in a *466 note in 2 Nott and McC. 151, but it is there copied from Bre-yard’s Reports then in manuscript. The reporter was one of the four Judges who decided the case. In a note by the reporter, there are two queries: 1st. whether it would have varied the case if it had been proved that the right of the donees to the negroes had been disputed? 2, Did the undivided fart of Dorothy pass to her husband by the marriage ? Why should this quere be put, if the Court had so decided? These notes show very clearly that the learned Judge did not cousider that that case had decided that Dorothy’s undivided interest passed to her husband ; and confirms what I think manifest, that the Court decided on the ground that a partial but informal division had been made, upon which the marital rights of Geiger had attached, because he had a possession in severalty. The first quere conclusively shows that he did not consider that case as deciding that the marital rights attached on any property where the wife’s title was disputed. The most that fian be said to have been decided in that case is, that-where the other joint owners recognize the right of the husband, and admit him into a participation, by giving up to him a part of the property, this was a reduction into actual possession, so as to vest the negro in him jure mariti. The next case was Burgess v. Heape. In that •case, by some legal process, "certain negroes, the property of .the defendant, Heape, and of his sister, Mrs. Burgess, had ■been recovered. The right was, then, clear and established. All that could be necessary to confirm the right of the husband, was a reduction into possession. The negroes were delivered up to Heape. The husband, alone, had a right to receive his wife’s share. A delivery to Heape of the whole, was a delivery to him and Burgess, and his possession was not as joint tenant with his sister, Mrs. Burgess, but as a joint tenant with her husband, who, alone, was entitled to receive her share. It is like (in most respects) a gift made to a wife during coverture,jointly with another. In such case the husband would be entitled, on the principle that a gift to the wife is a direct gift to the husband, and the receipt and possession -of the other joint tenant, would be the possession of himself and the husband. In Burgess v. Heape the Court refer to Geiger’s case as authority for the principle that the possession of Heape was such a possession of his sister, Mrs. Burgess, as to vest her share in the husband. But it was clear the. ■complainants were the only persons entitled to Mrs. Heape’s half of the negroes. Justice was on their side, and the Court was struggling to prevent the defendant from cheating his sister’s husband and child, as would have been the effect of dismissing the bill, because there had been no administration on Mrs. Burgess’s estate. In that case the Court discuss the question, and I am inclined to think the bill might be retain *467 ed, although no administration had been granted, as all the parties in interest were before the Court. If it had been t clear that Geiger’s case had decided the principle supposed, it was wholly unnecessary to discuss the other question.
The same dictum is enunciated in Pickett v. Barber; but it was not a point in the case; so also in Verdier v. Verdier. There the question was, whether actual partition had been made by the executor, and that question is extensively dis-1 cussed, but it would have been wholly immaterial, if the possession of a co-tenant was alone sufficient to vest the wife’s undivided share in her husband. There are other cases in which, incidentally, the same doctrine is enunciated, as in Heath v. Heath. But the case in which the decision is put upon that ground alone by Chancellor Harper, who delivered the opinion of the court, is the case of Hill v. Hill. In that opinion, Dun'kin, C. concurred, but in his circuit decree he places the decision upon this, as well as another ground upon which it might just as well be maintained. Chancellor D. Johnson was absent, and Chancellor J. Johnston did not concur on this ground. He says, “ the doubt I entertain, is, whether the marital right of Jonathan M. Hill attached on the shares of the deeded property, which accrued to his wife by survivorship; at least to the extent to exclude her right to a settlement, (according to the practice of the court.) Those shares not having been partitioned and set off to her, and the husband having been obliged to establish her right by suit, and having joined her in 'the bill for that purpose. On this point, I am not, however, prepared to dissent.” Now, this, in effect, is precisely the question we are now to decide. The only difference is, that in the case of Hill v. Hill, the wife was a party complainant, in this case she was a defendant. That, I do not suppose, can make any difference. If a suit had been commenced at law, she must have been a plaintiff. In Equity, I understand the rule to be, that all parties in interest must be before the court, but as to the relief to be given, it is not material in what character they are there. In Story’s Com. on Equity, it is said, there is much good sense in disallowing any distinction founded on the mere consideration of who is plaintiff on the record. Her equity is precisely the same, whether she be plaintiff or defendant. If he (the husband) refuses, the court will withhold from him the possession, that it may survive to the wife.
When this case came before me on the circuit, and my attention was called particularly, for the first time, to the case of Burgess v. Heape, I did not feel myself at liberty to depart from or overrule what seemed to be a decision on the point, although it was against all my pre-conceived opinions. When the case came before the Law Appeal Court, such se- *468 • rious doubts were entertained ' about the correctness of the doctrine, that it was referred.to the Court of Errors. It has 'been twice argued in that court, where it has been decided ^ a maj0nty 0f the court, that the marital right of Hyrne, the defendant, did not attach on the share of his wife in the negroes, to which she,^with others, was entitled under the limitation in the will of'Peter Sinkler, So as to enable him, after the death of his wife, to assign it to Verdier, the defendant. In announcing that decision, the reasons which I shall assign are of course my own. Those who concur in the judgment of the court, do not necessarily concur in the reasoning. That is mere argument, and We see every day two minds coming to the same conclusion, by different processes of reasoning. This remark applies with much force to most of the cases which have been, quoted. I think I have shewn very conclusively, that none of the cases heretofore decided, was put distinctly on the ground involved in this case. There were other and much more satisfactory grounds j and on which the concurring Judges might have rested their Opinions. Take the case of Burgess v. Heape, for example. There the concurrence o'f the Judge who. signed the Opinion, might have been on the ground, that as all the parties in interest were before the court, no administration on Mrs. Burgess’ estate was necessary, as the same court had then recently decided in. Spann v. Jennings. The same may be said of Verdier v. Verdier. There the evidence 'was pretty clear, that the executor had made’ an .actual division, so that the. wife was not seized in joint tenancy, but in seve-ralty, at the time of the marriage. I have looked carefully through all the .cases, and I do not find that the affirmative of the question invol ved in this case can be said to have been decided by more than two Chancellors. At the hearing of the case of Burgess v. Heape, Judge O’Neal! was not present, and the case of Saucey v. Gardner shews very conclusively, from the use of the word “severalty,”' his opinion on the. question. I think, therefore,.there is nothing in the adjudged cases which puts this case on the footing of an adjudged case, and that we are not encumbered by any consideration arising out of the rule stare decisis. Considering it, therefore, as an original question, and haviiig no express authority to guide us, it will be necessary ,to bring jthe case to, and test it by, original and elementary principles. The first test which I will apply is this : could the husband sue alone? I know it is so affirmed in the case of Hill v. Hill, and assuming the doctrine of that case to be true, the consequence follows of course, that a» the law vests the legal estate jure mariti in him, the hu'sband may sue in his own name. But is it'so? There-are cases in which he may. sue alone, as if during the coverture, a promise be made-to the wife, or a. *469 chattel be given to her, there he may sue alone, because the husband aud wife being but one person in law, a promise to^ the wife is a promise to the husband, and a gift to the wife is a gift to the husband. This is a consequence necessarily resulting from the identity of husband and wife, as well as from the manifest intention of the donor, that the husband should take. If he did not so intend, he would have interposed a trustee. But the reason does not apply where the promise was made before coverture, or the wife’s title is traced to something done before her marriage. The rule laid down in Roper, 213, 214, is, that for what has accrued to the wife during coverture, the husband may sue alone, but for such debts, &c. as were due to the wife before marriage, and continue unaltered, since the husband cannot disagree to the interest, and has only a qualified right to them, viz. by reducing them into possession during her life, he is unable to maintain an action for such property, without making his wife a party.- Observe- the reason'. If a gift be made to husband and wife, he may refuse, he may disaffirm ; but if the estate be casfon the wife otherwise he cannot disaffirm. If in a like case, the husband should neglect or refuse to assert her title, and it is likely to be barred by the Statute of Limitations,, could not the wife appoint an attorney, under the 16th sec. of the Limitation Act ? I apprehend there can be no doubt of it, for the obvious reason, that the hifeband . could not disaffirm her right, and that it would .survive to her in case of his death. The rule at law is,- that those should be plaintiffs who are entitled to the subject of the suit. If the husband’s title be derived through the wife, she must be joined in the action; and the rule in equity is, that all must be parties, either complainants or defendants, whose rights would be affected by the decree. If the subject of the suit be what is usually called a chose in action, which belonged to the wife by some title anterior to the marriage, it is clear the wife must be joined, and the debt or damages would not be the husband’s, without a reduction into possession, or something equivalent. If, in such case, the husband designs to destroy the wife’s right, in case of survivorship,'he must sue for, and get possession during coverture, in the only way he can, by action in the name of husband and wife. About these principles there is no doubt; but it is said they do not apply. The possession of Dr. Glover was the possession of his co-tenants, and that this sort of constructive possession, was enough to invest the husband with possession jure mariti.
There is no doubt that joint tenants are seized in land per my et per tout, and that for certain purposes, the possession of one is the possession of all. For this reason, one joint tenant cannot plead the Statute of Limitations. But lean *470 see no good reason for engrafting upon that, a consequence , which is by no means a necessary one. One of the excellencies of the Common Law is, that its principles and its maxims are to be applied to the facts of every case, in harmony with other principles. It is a familiar principle, that one cannot dispute the title under which he enters, because having got possession under A’s title, he shall not be allowed to put , him to the proof of it; yet this is not an inflexible rule : the tenant may shew that his landlord’s title is ended, and that he has attorned to the true owner. So, also, we hear it said every day at the bar, that possession of a part is possession of the whole included in the tenant’s muniment of title; yet that is not true, when another is in the actual, or even constructive possession of the same land. As a general rule, a tenant cannot acquire a title against his landlord, by the Statute of Limitations; but if he give fair notice that he is holding in his. own right, and the landlord suffer him to hold ten years adversely, the statute will give him a title. One joint tenant cannot sue his co-tenant, at law, yet if he oust his co-tenant, trespass will lie against him, and I suppose ten years possossion, after ouster, might give a title in severalty. These illustrations shew that in the application of legal principles, we must look to other principles^and so apply them, that the whole may be in harmony an* consistency.
That the possession of one joint tenant is the possession of his co-tenants, is true in many cases; but it is not in every case. It is not so after ouster, nor am I able to perceive any reason for saying it is so, for the purpose of transferring the wife’s title to the husband, when the parties are in hostile attitude, and the tenant in possession has always repudiated • the title of those who claim as co-tenants. The common law set such little value on a mere chattel, that it provided no means for enforcing partition. In Co. Litt. sec. 323, p. 200, it is said, if one tenant in common of a chattel, excludes his co-tenant from possession and enjoyment, he has no remedy but, to take it back from his co-tenant whenever he can see the chance. Now, it may be, if the husband actúa1 ly seized the chattel and had it m possession, his marital rights may attach, especially if he retained possession ; or if, by the consent of the co-tenants, where the subject of the joint tenancy admitted of division, a part had been allotted to the husband and was in his actual possession, as was the fact in Geiger’s case, the marital rights might attach on what was in his possession; but that they should attach upon what he could possess himself of only by force or fraud, when he had a chance, and of which he might be dispossessed in the same way by his wife’s co-tenant the next term, I cannot understand. This mode of gaining and retaining possession is in *471 consistent with the good order and peace of society, and only to be tolerated when the law furnishes no other means of as-v setting a title. When the law has provided a process by which a joint tenant may be let into the quiet and peaceable enjoyment of his rights, that he is bound to pursue. That the law has provided such remedy, is very clear. On application to the Court of Equity, a partition will be ordered, and if the thing be incapable of partition so as to allot to each a part in severalty, it may be sold and the money divided. I conclude, therefore, that under our law, where the joint estate is in the possession of one joint tenant, and the husband has never had any possession, ho has only a right to be let into the possession o§his wife’s share in severalty by writ of partition, unless the parties can agree to a division. The interest of the wife in an undivided personal estate-is not strictly a chose in action, in'the ordinary sense of these words; nor can it, except in the cases which I have enumerated, be called a chose in possession. But it is more like the former than the latter. The right can only be enforced by a judicial proceeding; in which particular it is like a chose in action, and the same rules of law must be applied to ascertain the husband’s rights. When do they vest? Must he join the wife in the application for partition ? If the wife be entitled to a distributive share of an estate, or to a legacy, the marital rights do not attach until partition. The reason is, that until partition made, the wife has no right of possession. Nor has she any definite right of possession, where a joint estate is in her co-tenant, enforceable in any other way than by partition, .or his assent to a voluntary partition. In all these cases, when partition is actually made and the wife’s share set apart in severalty, then the title being in the wife, and she having a right of possession in severalty, the marital right attaches, as was said in Sausey v. Gardner. This makes a uniform and consistent rule by which to determine all cases of marital rights, acquired by the husband in the joint estate of. his wife. In common sense, there can be no difference whether the possession be in an administrator or a joint tenant. The husband’s remedy is a judicial process to compel partition, and in my judgment there is no legal distinction in this particular between the two cases. For these reasons, I think it very clear, that when a bill is filed for partition, the wife must be a party with the husband, and that his marital lights are not perfected until consummated by actual partition. This, I believe, is the general understanding of the profession. No lawyer would have thought of filing a bill against Dr. Glover, without making Mrs. Hyrne a party. In Hill v. Hill, and I believe in all the Cases where the wife was alive, she was made a party.. In thus deciding, I am well satisfied we are not unsettling any established rula *472 of property; we are correcting one of those errors which has crept in little by little, which has never been recognized as established law, and which, although often enunciated, was never made the distinct and exclusive principle upon which any case was decided, until the recent case of Hill v. Hill, and there, only by two out of the four Chancellors.
There is another view of the case which may serve to illustrate : Could the Court of Equity have ordered Mrs. Hyrne’s share to be settled, had she been alive, at the time the partition was finally made ? The rule is, that Equity will not order the husband’s estate to be settled on the wife. If he has reduced his wife’s estate into possession, it is his, and a settlement will not be-^creed. If the husband, without the aid of the Court, can get possession, the Court will • not interfere. But if the husband or his assignee come into the Court in order to get possession from another who withholds it, the Court will compel the party so applying to do equity by a settlement on the wife; and if he refuse, will withhold the possession, that the estate may survive to the wife. I think it has been shewn clearly,' that Hyrne could not have got possession of his wife’s share without a bill for partition, to which she was a necessary party. His right was stoutly disputed by Dr. Glover, who claims the whole under Mrs. Glover’s will. And even when the right to partition was established, there remained another question still more doubtful, whether the partition was to be made per sierpes, .or per capita. The decree established the right of Mrs. Hyrne to partition ; -but, until partition was made, what right had her husband 7 None, except what I have before mentioned: the right to seize by force or fraud, and to keep possession if' he was the strongest. This, if recognized, would lead to all Sorts of violence; to prevent this, the law gives him the peaceable remedy of partition:
When thus before the Court, chancery would, on application, compel him to make a settlement, by withholding the possession in case' of his refusal. I lay no stress on the fact that Hyrne and wife were defendants; they could not be made complainants, because they claimed differently from the complainants, Lemacks and wife. Mrs. Lemacks was a daughter of Mrs. Glover, and she claimed that the negroes should be divided per sierpes; whilst Mrs. Hyrne, being a grand daughter, would come in per capita; whether plaintiff or defendant, we have seen, on the authority quoted, was immaterial.
But it was argued at the bar, that a decree having been pronounced, settling the rights of the parties in the life time of the wife, the husband is entitled as survivor. It is clear, that by the English law the question in this case could seldom arise. There the husband is entitled to administration, *473 and by the 25th section of the Statute of Frauds, is not bound to make partition. In this State it is otherwise; can only take a share of the wife’s estate; her other distribu-tee, her mother, is entitled to come in equally. The only other case where survivorship has been recognized is, where there has been a joint judgment at law and execution awarded ; or, where there has been a joint decree in Equity, and an order for the payment of the money, as in Forbes v. Phepps. In this case of Forbes v. Phepps, there had been a decree that the wife’s share of a money fund should he paid to the husband and wife. Under such a decree, there is no doubt the husband was entitled to receive the money; but the wife died before the money was paid. The Court held the husband was entitled, without administration or liability to pay her debts out of the fund. The order for payment was of a definite sum of money, ascertained and ordered to be paid. It was like the suing out of execution. The case, so far as the judgment of the Court was concerned, was ended by a final decree. ■ Williams, in his Law of Executors, puts this case on this ground distinctly. But that is far from deciding this case. The circuit decree in the case of Lemacks and wife against Glover, after deciding the questions arising in the case, ordered a writ of partition to issue to divide the estate according to the principles decided by the decree. Hyrne’s name is not mentioned. In Muse ads. Ed-gerton it is said, that if there be a joint judgment in favor of husband and wife, and the husband dies, the judgment survives to the wife; and the same applies in Equity, unless there be an order for payment. If, in the case of Forbes v. Phepps, there had been a decree establishing only that the wife was entitled, and an order that the master state the account and ascertain the amount, but before there was any decree for payment, the husband died, can there be any doubt that the wife would be entitled, and not the executor of the husband ? The reason is, that there had been no final decree, the case was still in Court. But it was otherwise when an order was made for the payment of the money. That was a final decision. It is like the case of a gift of a chattel to the wife without a trustee. It vested in the husband as a gift to him. The Court might have made an order that the money should be settled on the wife. The omission to do so, in effect, was a decree, ordering the money to be paid to the husband. Has there been any such final decree in this case 1 A writ of partition merely directs partition to be made; it may be excepted .to at any time before confirmation. It is not unusual to set aside the return, and to order a new partition.
In the case of Speights v. Holliway, adm’r. of Meigs, the objection taken* at the return of the writ, was that the writ *474 had ordered the partition to be made in a way different from the rights of the parties. I do not understand a writ of partition is conclusive of any thing, except that the parties are entitled to have the joint estate divided according to their rights as settled by the judgment of the Court. If pendente lite new rights accrue by the death of any of the parties, these rights are to be judged by the general law, and not by any interlocutory order. If the husband dies, the right survives to the wife, not by any right of survivor, but because the estate is her’s. The marital rights have not attached.— For the same reason if the wife dies, there must be administration and distribution among her heirs. Until final decree this Court may order a settlement, because the estate is still the wife's; and until the partition is confirmed, the same may be done for the same reason. Indeed it is the general if not the universal practice, to order the settlement of the specific property, allotted to the wife by the partition, when the order of confirmation is made. It was said in argument, that the right of the Court to order a settlement, had nothing to do with the question, as Mrs. Hyrne was dead. It is only important as argument, illustrating the rights of the parties. If the Court, under the circumstances, had a right to have ordered a settlement, that proves the marital rights had not attached, the estate was still the wife’s, and must go to her administrator. That was the view taken by the parties in this case Hyrne, after he sold to Yerdier, administered ; this was no doubt with the concurrence of Yerdier, for he was security to the administration bond. It was done,I presume, on legal advice, and the result shows that the advice was proper. I do not mention the circumstance as one calculated to affect theriahts of the parties, but asa further evidence of the general understanding of the profession, that the marital rights of Hyrne had not attached. If they had, administration was unnecessary.
I have come, therefore, to the following conclusion, which I have endeavored to illustrate and enforce by the foregoing argument, viz :
1st. That the question is not res judicata.
2d. That the marital rights of Hyrne had not attached on his wife’s share of the estate, at the time of her death.
3d. That the husband’s claim is not aided by any decree of the Court, made in the life time of the wife. The result is, that there was error in the charge of the Circuit Court, and in the verdict found in confoimity with it. But as it is clear the plaintiff is entitled to the share of Hyrne, justice may be done without another trial, by his releasing one half the verdict. Upon his doing this, the motion for a new trial is refused, otherwise it is granted.
*475 0:Neall, Wardlaw, Frost and Withers, JJ. and Johnston and Caldwell, CO. concurred.

Motion granted, nisi.